UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| JERMAINE S. EWING, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13CV71 SNLJ |
| | ) | |
| LESLIE TYLER, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate in custody of the Missouri Department of Corrections ("MDOC"), brought the instant action pursuant to 42 U.S.C. § 1983 against defendants Leslie Tyler, Tina Boyet and Brian Robinson for alleged injuries he received while he was incarcerated at Southeastern Correctional Center ("SECC"). Defendants are all correctional officers at that facility and have filed a motion for summary judgment (#69). That motion has been fully briefed and is now ripe for disposition.

## I.  Background

The following facts are undisputed. On April 13, 2013, plaintiff was assigned to a "close observation cell" in administrative segregation because, several days earlier, on April 9, he had attempted to hang himself using sheets.

At 12:30 p.m. on April 13, an inmate two cells down from plaintiff broke the sprinkler in his cell, causing the cellblock to flood. Plaintiff's entire cell was flooded with "nasty" water containing chemicals, feces, and urine. At 3:30, defendants Tyler and Boyet arrived on shift in the unit where plaintiff was housed. When Tyler began passing

out meals, he saw that plaintiff's cell was flooded and that plaintiff could not reach the food port without stepping in the water. Defendant Tyler provided several sheets to plaintiff so that he did not have to stand in the water to receive his meal.

Defendant Tyler did not immediately ask plaintiff to return the sheets, and instead he continued to pass out meals to offenders. About an hour later, defendant Tyler asked plaintiff to return the sheets. He did so, but he kept one hidden in his cell alongside the toilet.

Sometime after 6:00 p.m. that same day, defendant Tyler dropped several more sheets inside plaintiff's cell and instructed plaintiff to use them to soak up the water remaining in plaintiff's cell. Plaintiff did so and returned the sheets, but he kept the sheet he had hidden next to the toilet.

Defendants Tyler and Boyet performed the required suicide watch checks on plaintiff in his cell at irregular intervals. However, while defendants were elsewhere in the wing, plaintiff fashioned the sheet he had hidden into a makeshift rope. At 7:09 p.m., plaintiff used the makeshift rope to hang himself from the beam in the window in his cell. He never lost consciousness, and, while he was hanging, he hit and spit at the camera in his cell to get attention.

Defendant Robinson was monitoring video in the control center at that time. He saw plaintiff hanging and immediately alerted officers to plaintiff's situation. At 7:11 p.m., defendants Tyler and Boyet, along with a supervising officer, entered plaintiff's cell and cut plaintiff down from where he was hanging.

Shortly thereafter, plaintiff was evaluated for injuries. He appeared disoriented at first and had ligature marks around his neck, but he had no significant injuries when a nurse treated him.

In his affidavit, defendant Tyler states he knew plaintiff was on suicide watch but did not know plaintiff had attempted to commit suicide with sheets on April 9. Tyler further states that he provided plaintiff with the sheets in order to soak up the water in his cell. Providing plaintiff with those sheets had violated prison policy, and defendant Tyler was disciplined. However, Tyler states that he did not intend to harm plaintiff and he did not recognize at the time that his actions put plaintiff's health and safety in jeopardy.

Defendant Boyet assisted defendant Tyler with cleaning up water in the cellblock, including handing out sheets. She avers that she did not take any actions she believed would allow or cause plaintiff to harm himself. Further, she states she did not intend to harm plaintiff, and she did not recognize at the time that her actions put plaintiff's health and safety at risk.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 claiming that defendants had violated his constitutional rights. Defendants have moved for summary judgment.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

Here, plaintiff has not responded to defendants' statements of fact, and he appears to concede that no genuine dispute of material fact exists. Regardless, the Court has thoroughly reviewed the entire record in making its decision.

## III. Discussion

Plaintiff claims that defendants violated his rights by failing to protect him in accordance with his Eighth Amendment rights under the Constitution. To prove such a claim, a plaintiff must show defendants were deliberately indifferent to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference requires "more than negligence, more even than gross negligence." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). This presents a very high standard:

> a prison official cannot be found liable under the Eighth Amendment …unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

4

> inference could be drawn that a substantial risk of serious harm exists, <u>and he must also draw the inference</u>.

*Farmer*, 511 U.S. at 837 (emphasis added).

Defendant Tyler admittedly violated prison policy when he provided plaintiff with sheets to sop up the water flooding his cell. However, to hold defendants Tyler and Boyet liable for failing to protect plaintiff, plaintiff must show that defendants knew of the risk that plaintiff would use one of the sheets Tyler provided to hurt himself and that they in fact drew the inference that plaintiff would harm himself. Here, they did not know that plaintiff had previously tried to harm himself with sheets, and they apparently did not know that plaintiff had kept one of the sheets provided to him. Defendants did not believe their actions placed plaintiff at risk. It is not enough that a defendant should have known that his conduct placed a prisoner at risk --- he must actually know. *See Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009). No reasonable jury could find that defendants Tyler and Boyet were deliberately indifferent to plaintiff's health or safety.

As for defendant Robinson, who was monitoring the cell cameras at the time plaintiff tried to hang himself, plaintiff himself argues that defendant Robinson was negligent in monitoring the cameras and sounding the alarm. In the security video, submitted to the Court under seal, plaintiff clearly begins behaving suspiciously at approximately 7:08 p.m.. Three officers arrive to cut plaintiff down just before 7:12 p.m.. It is unclear how much time passed between Robinson's sounding the alarm and the entrance of the three officers; however, even assuming Robinson could have or should have acted more quickly, any inattention by Robinson amounts to mere negligence, which cannot give rise to a deliberate indifference claim. *See id.* There is no evidence that defendant Robinson did not respond immediately when he noticed plaintiff

5

hanging in his cell. Thus, under these undisputed facts, no jury could find defendant Robinson was deliberately indifferent to plaintiff's health or safety.

Defendants also contend that plaintiff's limited injuries do not rise to the level of an Eighth Amendment claim, and they state they are protected by the doctrine of qualified immunity. Because the Court holds that no reasonable jury could find defendants were deliberately indifferent to plaintiff's health or safety, the Court need not address those arguments, and summary judgment will be granted for defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#69) is **GRANTED**.

Dated this <u>7th</u> day of August, 2015           .

                                                    STEPHEN N. LIMBAUGH, JR.
                                                   UNITED STATES DISTRICT JUDGE